IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID G. EBERSOLE,   :
           :
    Plaintiff,  :
           :  Civil No. 3:01-cv-1924
    v.     :
           :  Judge John E. Jones III
COMMONWEALTH OF  :
PENNSYLVANIA, *et al.,*  :
           :
    Defendants. :

## MEMORANDUM AND ORDER

### September 25, 2007

Plaintiff David Ebersole filed this action pursuant 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights.  The defendants at issue were employees in the kitchen at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), where Ebersole was confined, and the security lieutenant at that facility.  Ebersole alleges that the defendants retaliated against him for providing affidavits in support of the harassment lawsuit of another kitchen employee by placing him in the restricted housing unit ("RHU") and transferring him away from SCI-Camp Hill.  Ebersole also alleges that his placement in RHU and transfer were without due process and that conditions in the RHU violated his Eighth Amendment rights.

1

Presently before the Court is the motion for summary judgment of Defendants Alan Keck, Michael Enck, Robert Shellenberger, Shar Liddick, Bruce Burgess, Donald Gelnett, William Hartley, and Zoda Lauer.  For the reasons set forth below, the motion will be granted.

## I.    STATEMENT OF FACTS

The following facts are derived from the complaint and the briefs, declarations, and other evidence submitted by the parties in support of and opposition to the current motion.  These facts, and any reasonable inferences drawn therefrom, are viewed in the light most favorable to the non-moving party, Ebersole.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

While confined at SCI-Camp Hill, Ebersole was assigned to work in the prison kitchen where he was supervised by prison staff member Diane Schall. Defs.' Statement of Undisputed Material Facts ("SUF"), ¶¶ 5-6; Pl.'s Answer to Defs.' Statement of Undisputed Material Facts ("PA"), ¶¶ 5-6.  Defendants Enck, Shellenberger, Liddick, Burgess, Gelnett, Hartley, and Lauer were also kitchen staff.  Enck Decl. ¶ 1; Shellenberger Decl. ¶ 1; Liddick Decl. ¶ 1; Burgess Decl. ¶ 1; Gelnett Decl. ¶ 1; Hartley Decl. ¶ 1; Lauer Decl. ¶ 1.

Schall was the target of harassment and rumors of misconduct from some of the other kitchen staff, including defendants Enck, Shellenberger, Liddick,

2

Burgess, Hartley, and Lauer.  Schall Dep. at 11-15; Ebersole Dep. at 51-54.

Ebersole prepared a number of "affidavits" describing the harassment for Schall to

use in a potential civil lawsuit.  Ebersole Dep. at 60, 63, 65, 67-68, 72; Keck Decl.,

Ex. 1-2.  Ebersole describes himself as a "witness" for Schall in her "labor

dispute."  Ebersole Dep. at 60.  Ebersole also provided Schall with legal

information.  Schall Dep. at 18-20, 26.  Schall did not request that Ebersole prepare

the affidavits, and upon receiving them, filed reports and turned them over to

prison security.  Keck Decl. ¶ 15; Schall Dep. at 23-24, 27-28.

The other kitchen staff was unaware that Schall had turned the affidavits

over to security, Schall Dep. at 33-34; however, the kitchen staff heard rumors

from other inmates that Ebersole was preparing "legal work" for Schall.  Pl.'s Ex.

B; Enck Decl. ¶ 8; Burgess Decl. ¶ 7; Liddick Decl. ¶¶ 8-10; Shellenberger Decl. ¶

8; Gelnett Decl. ¶ 8; Hartley Decl. ¶ 8.  The kitchen staff were concerned that

Ebersole was preparing a discrimination and harassment lawsuit on Schall's behalf

against Enck, Liddick, and Shellenberger.  Keck Decl. ¶ 4; Pl's Ex. B & C.  Enck,

Liddick, and Shellenberger reported these rumors of possible fraternization to their

supervisors.  Schall Dep. at 24; Enck Decl. ¶ 9; Liddick Decl. ¶¶ 11-12;

Shellenberger Decl. ¶ 9.

Ebersole alleges that, because of the rumors regarding his legal help for Schall, he was threatened by Enck and Shellenberger.  Pl.'s Ex. A; Schall Dep. at 31-32.  Ebersole alleges that Shellenberger took him into the bread cooler alone and told him "there will be big problems for both you and Diane" and "someone is going to get hurt."[1]  Keck Decl. Ex. B.  Ebersole also alleges that Enck told him "I'll sick my dogs on you if you continue to help her" and shoved plastic water pitchers into his chest. Schall Dep. at 54-56, 81-82; Keck Decl. Ex 3.  Enck and Shellenberger admit that they spoke to Ebersole about the rumors, but deny threatening him him.  Pl.'s Ex. A at 2, 4-5, 7.

On September 10, 2001, Keck was assigned to investigate the alleged fraternization between Schall and Ebersole.  Pl.'s Ex. A at 1.  On that same date, Ebersole was placed in administrative custody in the RHU, pending the outcome of the investigation.  Keck Decl. ¶ 8; Pl.'s Ex. E at 13; Ebersole Dep. at 98.  Keck

---

[1] The complaint also alleges that Shellenberger "shoved [Ebersole] into a steel rack." Compl. ¶ 1080.  However, Ebersole's "affidavit", executed the day of the incident with Shellenberger, describes the incident in great detail but fails to mention any physical altercation. Keck. Decl. Ex B.  Further, Schall states that no one saw what happened in the bread cooler and that her knowledge of the incident is based only on Ebersole's affidavit.  Schall Dep. at 57. Shellenberger denies even verbally threatening Ebersole.  Pl.'s Ex. A.  On summary judgment, the court must reject this allegation of a physical altercation because it is wholly unsupported and, in fact, controverted by the evidence.  *See Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *Smith v. Dauphin County Adult Probation Dept.*, Slip Copy, C.A. No. 06-CV-2009, 2007 WL 2692320 at *3 n.4 (M.D. Pa. Sept. 12, 2007) (stating "in light of the standard of review governing motions for summary judgment, the court must disregard those allegations of Smith's complaint which are wholly unsupported by evidence of record").

placed Ebersole in the RHU to separate him from the prison staff.  Keck Decl. ¶ 8.

Keck placed Ebersole in administrative custody in the RHU pursuant to

Department of Corrections Administrative Directive ("DC-ADM") 802, which

provides for "closer supervision, control, and protection" of inmates.  Keck Decl.

¶¶ 9-10, Ex. 1.  Such confinement is standard procedure when an inmate is

implicated in an investigation.  *Id.* at ¶ 10.

Ebersole was confined in the RHU from September 10, 2001 to September

20, 2001.  Ebersole Dep. at 98; Pl.'s Ex. D.  Ebersole alleges that, while in the

RHU, he was denied showers, exercise, and medical treatment.  Ebersole Dep. at

98.  Ebersole also states that his legal materials were withheld from him.  Ebersole

Dep. at 106; SUF ¶ 11; PA ¶ 11.  Ebersole filed grievances about his transfer to

and the conditions of the RHU, which were not responded to for almost 80 or 90

days.  Ebersole Dep. 104-05.  After his release from the RHU, Ebersole remained

in administrative custody until his transfer from SCI-Camp Hill.  *Id.* at 99.

Ebersole was not told why he was assigned to the RHU and was not given a

hearing regarding the placement.  *Id.*  Ebersole, however, was informed of the

investigation and interviewed by Keck on September 20, 2001.  Ebersole Dep. at

98, 100, 101-02; Pl.'s Ex. A at 1.

After conducting interviews of Ebersole, Schall, Enck, Shellenberger, Liddick, and two other kitchen employees, Keck prepared a written report of his findings.  SUF ¶ 12; PA ¶ 12; Pl.'s Ex. A.  Keck was not able to substantiate the allegations of fraternization between Schall and Ebersole, and therefore, recommended that the investigation be closed and no action be taken against Schall.  Pl.'s Ex. A; Keck Decl. ¶ 17.

Keck, however, concluded that Ebersole had become too familiar with kitchen staff, and that, given the allegations of fraternization and Ebersole's affidavits alleging harassment by the staff, it would difficult, if not impossible, to keep Ebersole safe at SCI-Camp Hill.  Keck Dec. ¶¶ 18-19.  For reasons of safety and security, Keck recommended that Ebersole be transferred from SCI-Camp Hill.  Keck Decl. ¶ 20; SUF ¶ 14.  Ebersole was transferred to SCI-Retreat on December 12, 2001.  SUF ¶ 14; PA ¶ 14.  Ebersole claims that his custody level was raised when he was transferred to SCI-Retreat, so that he must be escorted by guards at all times.  Ebersole Dep. at 109-10.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party

bears the burden of demonstrating the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden

by pointing to an absence of evidence supporting an essential element as to which

the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the

moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).   An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find

for the non-moving party, and a factual dispute is "material" only if it might affect

the outcome of the action under the governing law.  *Anderson*, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rest upon

the mere allegations or denials of the adverse party's pleadings, but ... must set

forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

56(e).  The non-moving party "cannot rely on unsupported allegations, but must go

beyond pleadings and provide some evidence that would show that there exists a

genuine issue for trial."  *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent.*

*Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the underlying facts and all reasonable inferences therefrom must be

viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact-finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. 242, 247-48 (1986).

## III. DISCUSSION

Ebersole brings this action pursuant to 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but a means of redress for violations of federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Although it somewhat difficult to discern because of his shotgun approach to pleading, here Ebersole claims that the defendants' actions violated his First, Eighth, and Fourteenth Amendment rights. Pl.'s Opp. at 1-2.

### A. Defendants' Personal Involvement

All of defendants but Keck first argue that they are entitled to summary judgment because Ebersole has failed to demonstrate their personal involvement in

a constitutional deprivation.  Defs.' Br. at 9-11.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Although Ebersole does not proceed on a respondeat superior theory, he must still demonstrate that the defendants personally participated in the alleged constitutional violations.  *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (holding district court properly dismissed claims against defendants because plaintiff "did not allege they engaged in specific behavior that contributed to his harm"); *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.").

All of the defendants have stated that they were not personally involved in any retaliation against Ebersole.  Defs.' Br. at 11.  All of the defendants, with the exception of Keck, have stated that they were not personally involved in Ebersole's confinement in the RHU or his transfer from SCI-Camp Hill.  *Id.*  Ebersole has set forth no specific facts controverting this evidence.

With respect to defendants Burgess, Gelnett, Hartley, and Lauer, Ebersole has alleged merely that these defendants harassed Schall in his presence, were aware of rumors that he was helping Schall prepare a lawsuit, and yelled at him.

Ebersole does not allege that these defendants were involved in any way with his transfer to RHU or from SCI-Camp Hill.  Verbal harassment or threats, especially when not directed at a plaintiff himself, do not give rise to a claim under § 1983. *Burkholder v. Newton,* 116 Fed. Appx. 358, 2004 WL 2677161 at *2 (3d Cir. 2004) ("It is well established that allegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983"; collecting cases); *Smith v. Lycoming County*, Slip Copy, C.A. No. 05-CV-1729, 2007 WL 2458544 at *3 (M.D. Pa. Aug. 24, 2007); *Rigney v. Guzenski*, Slip Copy, C.A. No. 06-CV-2110,  2007 WL 2407286 at *3-4 (M.D. Pa. Aug. 21, 2007).  Ebersole has set forth no evidence demonstrating that these defendants were personally involved any misconduct cognizable under § 1983.  Therefore, these defendants are entitled to summary judgment.

With respect to defendants Liddick, Enck, and Shellenberger, Ebersole alleges that these defendants prepared false reports of fraternization to have him removed from the kitchen and placed in the RHU.  Pl.'s Opp. at 17.  The evidence indicates that Liddick, Enck, and Shellenberger filed incident reports regarding rumors of fraternization.  *See* Schall Dep. at 24; Enck Decl. ¶ 9; Liddick Decl. ¶¶ 11-12; Shellenberger Decl. ¶ 9.  Nothing in the record, however, supports Ebersole's allegation that these reports were false.  The reports merely state that

these defendants heard rumors. *See, e.g.*, Pl.'s Ex. B. That the rumors themselves were never substantiated does not make the report of their receipt false. In addition, Ebersole fails to present any evidence, beyond cursory and conclusory allegations of a "conspiracy", to connect the incident reports to a constitutional violation committed by any of these defendants. Liddick, Enck, and Shellenberger accurately reported their observations to superiors. These actions do not constitute personal involvement in a constitutional violation.

Ebersole also alleges that Enck and Shellenberger threatened him for what they perceived was his legal assistance of Schall. Pl.'s Ex. A; Schall Dep. at 31-32. As noted above, threats generally cannot form the basis for a § 1983 claim. Such threats may only be cognizable under § 1983 if accompanied by an egregious reinforcing physical act. *See, e.g.*, *Northington v. Jackson*, 973 F.2d 1518 (10th Cir. 1992) (prison guard put revolver to inmate's head and threatened to shoot); *Douglas v. Marino*, 684 F. Supp. 395 (D.N.J.1988) (prison employee threatened inmate with a knife). The minor confrontations that Ebersole alleges here are a far cry from such cognizable harassment claims. Liddick, Enck, and Shellenberger are also entitled to summary judgment.

**B.      Ebersole's Retaliation Claim**

Ebersole alleges that Keck's decision to assign him to the RHU and to transfer him from SCI-Camp Hill was made to retaliate against him for drafting affidavits on behalf of Schall.  Keck argues that he is entitled to summary judgment because Ebersole cannot meet the required elements of a retaliation claim set forth in *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001).

A prisoner plaintiff alleging retaliation must make three showings.  First, the plaintiff must show that he was engaged in constitutionally protected conduct.  *Id.* at 333.  Second, the plaintiff must show that there was an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Id.*  Finally, there must be a causal link between the exercise of the prisoner's constitutional rights and the adverse action taken against the prisoner. *Id.* at 333-34.  This third element uses a burden-shifting framework.  The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial motivating factor in the decision to retaliate against him. *Id.*  A plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).  Once the

12

prisoner meets this burden, the burden then shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same action even in the absence of the protected activity. *Rauser*, 241 F.3d at 334.

The Third Circuit has recently instructed district courts to "be diligent in enforcing these causation requirements" in recognition of the fact that public actors "must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actor' decisions." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267-68 (3d Cir. 2007). This is especially true in the prison context where, in considering the third element, the court must take into account that the difficult task of prison administration is best left to prison officials who possess the necessary expertise. *Rauser*, 241 F.3d at 334 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Even if a prisoner can demonstrate that the exercise of his constitutional rights was a substantial or motivating factor in the decision to discipline him, so long as a prison official can prove that absent the protected conduct he would have made the same decision for reasons reasonably related to a legitimate penological interest, he will prevail on a claim of retaliation. *Id.*

As to the first element of a retaliation claim, Ebersole argues that his provision of affidavits on Schall's behalf is protected First Amendment activity.

13

Pl.'s Opp. at 17-18.  The Court agrees that Ebersole's executing affidavits in

support of another person's civil litigation is protected conduct.  The Court notes,

however, that Ebersole does not have a free-standing constitutional right to provide

legal assistance.  *Shaw v. Murphy*, 532 U.S. 223, 229 (2001); *Carter v. McGrady*,

292 F.3d 152, 153-54 (3d Cir. 2002).  Ebersole's right to provide legal assistance

does not receive any special First Amendment protection beyond that afforded to

any other inmate communication, and therefore is "more limited in scope than the

constitutional rights held by individuals in society at large" and restricted by the

recognition that "[i]n the First Amendment context ... some rights are simply

inconsistent with the status of a prisoner or with the legitimate penological

objectives of the corrections system."  *Shaw*, 532 U.S. at 229.

The Supreme Court has found it "indisputable" that inmate legal assistance

is "sometimes a menace to prison discipline" and can "undermine prison officials'

ability to address the complex and intractable problems of prison administration."

*Id.* at 231 (citations omitted).  These warnings are particularly apt in this case

where an inmate provided legal assistance to a member of the prison staff.  *See*

*Overton v. Bazzetta*, 539 U.S. 126, 132-33 (2003) (stating "freedom of association

is among the rights least compatible with incarceration"); *Lape v. Pennsylvania*,

157 Fed. Appx. 49, 2005 WL 3113570 at *6 (3d Cir. 2005) (holding

"fraternization between correctional officers and inmates would have a deleterious impact on the staff and inmates of the correctional facility").

As to the second element of a retaliation claim, Ebersole argues that his assignment to the RHU and eventual transfer from SCI-Camp Hill are adverse actions.  For the purposes of a retaliation claim, an action is adverse if it is "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Rauser*, 241 F.3d at 333.  In arguing that his time in the RHU and transfer are sufficiently adverse, Ebersole relies on *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), where the court held that a prisoner's allegations of being placed in disciplinary confinement for three months were sufficient to prevent his complaint from being dismissed as frivolous.

Ebersole's ten days in the RHU are certainly far less than the three months of confinement at issue in *Mitchell*.  The Court also strongly doubts that Ebersole was, in fact, deterred by his transfer or time in the RHU, as he continued to interact with Schall, continued to file grievances, and continued to prosecute multiple civil lawsuits against prison officials.  *See Keys v. Kramer*, C.A. No. 04-CV-0823, 2006 WL 1670218 at *6 (M.D. Pa. June 6, 2006) ("Plaintiff continued to file grievances against prison staff with the prison, and he continued (up to the present time) to file civil rights actions with this Court. In fact, Plaintiff can hardly claim that he was

15

deterred."); *Bartelli v. Bleich*, C.A. No. 04-CV-0899, 2005 WL 2347235 at *3

(M.D. Pa. Sept. 26, 2005) ("Plaintiff's civil rights lawsuits and complaints against

prison officials belie any assertion that defendant Bleich's alleged threats affected

Plaintiff's exercising his First Amendment Rights.").  Under the objective standard

required by *Rauser*, however, the Court holds that Ebersole has presented

sufficient evidence of adverse actions to allow a reasonable jury to conclude that a

person of ordinary firmness would be deterred from exercising his constitutional

rights.[2]

Ebersole has not, however, met his burden as to the third element of his

retaliation claim, showing that his constitutionally protected conduct was a

substantial motivating factor in Keck's decision to place him in the RHU or

transfer him.  Other than conclusory allegations of a "conspiracy," Ebersole puts

forth no evidence demonstrating that Keck's decisions were motivated by the fact

that he provided affidavits.  Even if Ebersole had produced such evidence, Keck

has produced more than sufficient proof that he would have taken the same actions

---

[2] The Court notes that, even if the defendants other than Keck were found to have the requisite personal involvement under *Rode*, they would still be entitled to summary judgment on the alternative ground that their threats and harassment do not rise to the level of a sufficient adverse action to state a retaliation claim.  *See, e.g.*, *Panton v. Boom,* Slip Copy, C.A. No. 07-CV-0350, 2007 WL 853848 at *2 (M.D. Pa. 2007 Mar. 20, 2007); *Alexander v. Forr,* Slip Copy, C.A. No. 04-CV-0370; 2006 WL 2796412 at *4 (M.D. Pa. Sept. 27, 2006); *Bartelli v. Bleich,* C.A. No. 04-CV-0899, 2005 WL 2347235 at *3 (M.D. Pa. Sept. 26, 2005).

for legitimate penological reasons regardless of Ebersole's assistance of Schall.

Even where a prisoner shows that his exercise of a constitutional right was a

motivating factor in taking an adverse action, a prison official may still prevail by

proving the same decision would have been made absent the protected activity.

*Rauser*, 241 F.3d at 334.  Thus, even if there is a genuine dispute as to retaliatory

intent, a prison official may still prevail on a summary judgment motion by

showing that the same action would have been taken for a legitimate penological

purpose.  *Alexander v. Forr*, Slip Copy, C.A. No. 04-CV-0370, 2006 WL 2796412

at *2 (M.D. Pa. Sept. 27, 2006) (collecting Third Circuit precedent).

Here, Keck states that he transferred Ebersole to the RHU and eventually

from SCI-Camp Hill for his own safety after Keck concluded that it would be

extremely difficult, if not impossible, to keep Ebersole safe.  Keck Decl. ¶¶ 8-10,

19-20.  Keck assigned Ebersole to the RHU pursuant to a DOC directive that

provides for "confinement for non-disciplinary reasons which provides closer ...

protection than is provided for in general population."  *Id.* at ¶ 9-10, Ex. 4.  Schall

even informed Keck herself that Ebersole would be in danger if the kitchen staff

found out about the affidavits.  Schall Dep. at 36-37.

Keck also placed Ebersole in the RHU and transferred him from SCI-Camp

Hill to separate him from Schall in light of the serious concerns of fraternization

between them.  Keck states that it is standard procedure to place any inmate

implicated in an investigation into administrative custody.  Keck Decl. ¶ 10.

Ebersole's transfer from SCI-Camp Hill was approved by eight prison official in

addition to Keck because of "[l]egitimate concerns about possible fraternization."

Williamson Decl. ¶ 5-8.  The fact that Keck eventually determined that no action

should be taken against Schall does not make the decision to place Ebersole in the

RHU or transfer him illegitimate.  Ebersole presented a legitimate risk of

fraternization between inmates and staff, and the Court must defer to the rational

decision of numerous prison officials that Ebersole's administrative custody and

transfer served the legitimate penological interests of the facility.[3]  *Shaw*, 532 U.S.

at 229-30.  Such deference is especially warranted here because's Ebersole's right,

as an inmate, to associate with a staff member like Schall is particularly limited.

*Overton*, 539 U.S. at 132-33.  Keck is entitled to summary judgment on Ebersole's

retaliation claim.

### C.   Ebersole's Due Process Claim

Ebersole also claims that his assignment to the RHU and transfer from SCI-

Camp Hill violated due process.  The first step in analyzing a procedural due

---

[3] The "legitimate concerns about possible fraternization" were proven to be valid in that
Ebersole and Schall are now engaged.  Defs.' Attach 1.

process claim is to determine whether the interest asserted is protected by the Due

Process Clause in that nature of the interest is within the contemplation of the

"liberty or property" language of the Fourteenth Amendment. *Shoats v. Horn*, 213

F.3d 140, 143 (3d Cir. 2000).   If so, the question then becomes what process is

due to protect it. *Id.*

 In the prison context, protected liberty interests are limited to deprivations

that impose "an atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995).

The determination of what is "atypical and significant" is based on the full range of

conditions a prisoner may encounter, not simply the conditions in the general

population of the prison. *Griffin v. Vaughn*, 112 F.3d 703, 706 n.2 (3d Cir. 1997);

*Shoats*, 213 F.3d at 144 (citing *Sandin*, 515 U.S. at 486).   "Discipline by prison

officials in response to a wide range of misconduct falls within the expected

perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

 Rarely will confinement in administrative or punitive segregation be

sufficient to establish the kind of "atypical" deprivation of prison life necessary to

implicate a liberty interest. *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002)

(citing *Sandin*, 515 U.S. at 486).   "[D]isciplinary detention and administrative

segregation are the sorts of confinement that inmates should reasonably anticipate

receiving at some point in their incarceration," and therefore do not implicate a liberty interest protected by the Due Process Clause. *Torres v. Fauver,* 292 F.3d 141, 150 (3d Cir. 2002) (citations omitted).  In this case, Ebersole's ten days in the RHU and placement in administrative custody fall well short of the "atypical" deprivation that triggers the Due Process Clause. *Compare Sandin*, 515 U.S. at 486 (30 days in segregated confinement not atypical and did not implicate protected liberty interest); *Smith*, 293 F.3d at 645, 654 (7 months in disciplinary confinement did not implicate a liberty interest), *Torres*, 292 F.3d at 151-52 (disciplinary detention for 15 days and administrative segregation for 120 days was not atypical and did not implicate a protected liberty interest), and *Griffin*, 112 F.3d at 706-09 (administrative detention, which imposed strict restrictions on outside contact and personal conveniences, did not implicate a protected liberty interest) *with Shoats*, 213 F.3d at 144 (8 *years* in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited from visiting the library or "participating in any education, vocational, or other organization activities," implicated a protected liberty interest).

Ebersole's transfer also may not form the basis for a due process claim as the Supreme Court has clearly held that an inmate does not have a constitutionally

protected liberty interest in his place of confinement, his transfer, or his

classification. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*,

427 U.S. 215, 224 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).

Ebersole cites to *Wilkinson v. Austin*, 545 U.S. 209 (2005) in arguing that he has an

interest in avoiding transfer, but that case is not on-point here.  In *Wilkinson*, the

court found that inmates had a protected liberty interest in avoiding assignment to a

state supermax prison.  *Id.* at 224.  Placement in the supermax facility isolated the

inmate from almost all human contact; exposed the inmate to 24-hour-a-day

lighting; limited exercise to 1 hour per day in a small indoor room; the duration of

the placement was indefinite, with only annual reviews; and placement disqualified

an inmate for parole.  *Id.* at 223-24.  The court found that "[w]hile any of these

conditions standing alone might not be sufficient to create a liberty interest, taken

together they impose an atypical and significant hardship within the correctional

context."  *Id.* at 224.  Ebersole faced no such hardships upon his transfer to SCI-

Retreat.  The mere fact that his custody level was raised after his transfer does not

implicate a protected liberty interest.  The defendants are entitled to summary

judgment on Ebersole's due process claim.

**D.     Ebersole's Eighth Amendment Claim**

Although not pressed by either party in their briefs, Ebersole does claim that the defendants subjected him to "cruel and unusual punishment in violation of the Eight [sic] Amendment."  Pl.'s Opp. at 1.  To the extent Ebersole means to argue that his Eighth Amendment rights were violated either by the conditions in the prison kitchen or during his ten-day stay in the RHU, his claim may be quickly addressed.

Although the Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of basic human needs, *Helling v. McKinney*, 509 U.S. 25, 32, (1993), it does not mandate that prisons be free of discomfort. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard. *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir.1985); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 757 (3d Cir.1979).

To sustain an Eighth Amendment claim, an inmate must also show that the defendants acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Specifically, an inmate must prove that the defendant demonstrated "deliberate indifference" to a serious risk of harm to which the

22

inmate was exposed. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In this case, the atmosphere in the prison kitchen, although certainly unprofessional, does not begin to approach the conditions prohibited by the Eighth Amendment.  Nor does the fact that Ebersole was denied showers or exercise for the ten days he was in the RHU rise to the level of an Eighth Amendment claim. *See, e.g.*, *Wivell v. Adams County Adult Correctional Facility*, Slip Copy, C.A. No. 07-CV-1193, 2007 WL 2155726 at *3 (M.D. Pa. July 25, 2007) (stating "it has been recognized that the denial of showers for two weeks is not a constitutional violation"; collecting cases); *see also Hutto v. Finney*, 437 U.S. 678, 685 (1978) (finding that "[i]n considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without these benefits").  Ebersole does not allege that he needed medical treatment which was denied to him, but only that he could not go to the infirmary should medical treatment be necessary.  Thus, Ebersole cannot demonstrate any defendants'

deliberate indifference to a medical need that did not exist.  In sum, Ebersole has failed to present any evidence supporting an Eighth Amendment claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court shall grant the defendants' motion for summary judgment on all claims.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Defendants' motion for summary judgment (Doc. 401) is GRANTED.

2.    The Clerk of the Court is directed to enter judgment on all claims against the Plaintiff and in favor of the following Defendants:

        a.  Alan Keck,

        b.  Michael Enck,

        c.  Robert Shellenberger,

        d.  Shar Liddick,

        e.  Bruce Burgess,

        f.  Donald Gelnett,

        g.  William Hartley, and

        h.  Zoda Lauer.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge

24